The court recessed before completing the arguments for the day. We'll begin with United States v. Mejia-Hernandez. Ms. Davidson? Good afternoon and may it please the court. I'm Kristen Davidson on behalf of Ronald Mejia-Hernandez. Mr. Mejia was convicted of illegal reentry. In the course of calculating his advisory guideline, there was an aggravated felony enhancement assessed because he has a prior conviction in California for attempted first degree burglary. In order to analyze whether or not that enhancement should apply, we ultimately come to 18 U.S.C. section 16. And the ultimate question before the court today is whether section 16b is unconstitutionally vague as a result of the Supreme Court's recent decision in Johnson v. United States. I'd like to start by identifying two points where I believe we can agree. First, when we're analyzing section 16b in this context, we're under the categorical approach. That means when we look to a prior crime, we're looking only to the elements and not to facts or the defendant's particular conduct. And number two, as this court has aligned its 16b jurisprudence with the Supreme Court's ACCA decisions, we've identified that section 16b requires the ordinary case analysis in order to understand that provision. Where we disagree, obviously, is the effect that Johnson has on the 16p analysis. In Johnson, the Supreme Court holds that ACCA's residual clause is unconstitutionally vague. And it identifies two factors for the indeterminacy of that provision. The face of 16b has those same indeterminacies. The first point is whether, the first question is how we understand how to assess the risk under 16b. The answer to that is the ordinary case. When we're looking at the ordinary case, it's really a two-step analysis. Number one, the court has to identify the ordinary case. And the Supreme Court identifies that that requires a level of judicial imagination because it's not conduct that's necessarily an element of the prior offense. And that level of judicial imagination is standardless. Number two, we don't know how much risk to identify when we're assessing section 16b. The risk assessment is made in relation to that ordinary case. So, if the ordinary case is itself an indeterminate standard, it becomes impossible, according to the Supreme Court, to properly assess risk because it's an indeterminate standard. And the face of 16b requires these same levels of indeterminacy. I'd like to point out that in identifying the quantum of risk and the indeterminacy of how much risk is required, there has definitely been a disagreement between Mr. Mejia and the government about the role under ACCA that the enumerated offenses play. But the Supreme Court identified these enumerated offenses in ACCA not to provide the quantum of risk. That was expressly addressed in James and Begay. We're not looking to the enumerated offenses under ACCA to know how much. But really, Congress listed these as examples, as some sort of starting point to try and shore up the indeterminacy of ACCA's residual clause. So there's really not a profound difference that 16b lacks those enumerated offenses. If ACCA cannot—if ACCA's residual clause— Is this the part in Johnson where Justice Scalia talked about the use of the phrase, shades of red, and then seemed to tie it to the enumerated offenses? Is that right? So where he said the use of the phrase, standing alone, is not necessarily confusing, but then when you tie it to something else, like enumerated offenses, then it could get to be very confusing. Correct. And what we don't have with 16b is the enumerated offenses. Correct. Congress did not provide the Court a list of examples of the types of crimes it wanted to have fall under Section 16b. And so the absence of any example does not make such a broad clause any more determinate. So explain to us how you distinguish or get around echeverria. I'm sorry? Explain to us what you do with the echeverria case from our circuit. I understand you mentioned it pretty thoroughly in your briefing, but explain to us how you avoid that case. Just to clarify, Your Honor, it's Echeverria-Gomez? Yes. I'm sorry. That's the full name. Absolutely. Echeverria-Gomez, of course, is where this Court found that California first-degree burglary fell under 16b. That case does not, the question in that case is not whether Section 16b is unconstitutionally vague. So I don't think that the holding of Echeverria-Gomez prevents the Court from answering the question we're presenting in our case about the facial vagueness of Section 16b. And I don't think there's anything in Echeverria-Gomez that prevents this Court from acting in line with the Supreme Court's decision in Johnson. I wonder about that because, obviously, Johnson wasn't a 16b case and, I mean, absent Johnson, you'd be stuck with Echeverria, wouldn't you? Yes. I mean, the result you would have to acknowledge would be different. Isn't the Ninth Circuit recent case on DiMaia virtually identical? It is. You've got, go ahead. Oh, well, just to clarify, in DiMaia, the Court is looking at a decision by the BIA, but ultimately they find Section 16b is unconstitutionally vague in line with Johnson. And the dissent goes into quite a bit of detail on why it's not. Correct. Well, does that case, is that our closest guidance, or are there other cases that you think, I mean, that's more on point than Johnson, which was ACCA? I believe the Ninth Circuit's case in DiMaia is the only other circuit case that has dealt with this question on point. So in terms of what a circuit has done, that is the closest analog. Given this Court's jurisprudence in 16b and its alignment with understanding 16b in parallel with ACCA as soon as the Supreme Court started to articulate the ordinary case after James, even though Johnson is an ACCA case, it provides tremendous guidance because the ordinary case standard that's required by ACCA's residual clause is the same standard. It is because of that standard that the Circuit has identified 16b requiring the ordinary case. So I think it's a combination of both. And I believe your other part of your question dealt with the dissent. My understanding is the dissent really focuses on two points. One, the relationship of Leocal, and two, the presence of the enumerated offenses. Presence of what? The enumerated offenses in ACCA versus 16b. For that first point, and the role that Leocal plays or doesn't play, I think we have to—my understanding is that the dissent in DiMaia focuses on whether the status of Leocal post-Johnson. Was Johnson overruling Leocal? Leocal does not address the question of vagueness in 16b. So I think the technical answer is that Johnson does not expressly overrule Leocal, just like Johnson did not expressly overrule Begay or Chambers. The questions of vagueness weren't raised in those cases. I don't think the holding in Leocal in any way prevents this court from continuing its alliance with the Supreme Court logic and law that it articulates in Johnson. In other words, Leocal doesn't save 16b based on the analysis in Johnson. The second point I've addressed a little bit, and the dissent in DiMaia is my understanding, finds important the presence of the enumerated offenses in ACCA versus the lack of enumerated offenses in 16b. And I've addressed that a little bit already. But really, the ACCA residual clause does not include the enumerated offenses. What was struck down in Johnson was truly the residual clause which begins from or otherwise involves forward. The enumerated offenses were preserved. What we know from the Supreme Court's precedent in dealing with ACCA is that the enumerated offenses were looked to as part of a solution. And they could not provide a solution because the residual clause was standardless. So not part of the problem and couldn't provide a solution. So I think in those ways, the dissent in DiMaia does not persuade against this court continuing to apply Supreme Court precedent in ACCA in alignment with 16b. My argument is, I think, pretty simple and pretty fully outlined in the briefing. You've saved time for rebuttal. Yes. May it please the court and counsel, Mara Blatt for the United States is aptly in this matter. I'd like to just in outline form discuss very quickly what the four compelling reasons are why Mahia's appeal here fails today. And then I'll circle back and fill in some content. The first is that there is a strong presumption, a very strong presumption that statutes are constitutional and Mahia maintains the burden to overcome that presumption.  Secondly, Johnson did not declare 16b unconstitutional. It didn't overrule or gut Leocal. And Leocal is actually what controls Echeverria. And here today, they've conceded that absent Johnson, Echeverria would control. And this court should decline to find 16b unconstitutional because it is substantively and dispositively different from the ACCA residual clause as a matter of elements. Third, Johnson did not eliminate the ordinary case method nor the categorical approach. In fact, it reaffirmed the viability of both. And then finally, this court should not rule that 16b is unconstitutional because to do so would exceed the proper exercise of its judicial mandate and seriously degrade the doctrine of stare decisis. So let me return to my second point, which was that Johnson did not declare 16b unconstitutional. In fact, it never mentioned 16b and it certainly doesn't discuss Leocal either. So at best, Mejia can only claim that 16, that the court over, that the application of Johnson to 16b can only be an application of implication. That this court can imply from Johnson that 16b is unconstitutional. And that raises the specter of the general rule against a court of appeals finding overruling Supreme Court precedent based on it. It also flies in the face of what the Supreme Court told us in the Shearson American Express case, which is that we're not supposed to anticipate what the Supreme Court might do, but we look to the law as it's already been decided. Exactly, Your Honor. And that's a case where the court of appeals was actually right and the court still said, no, don't do it, let us do it. Is that what the Ninth Circuit did in Damien? I think it did overstep its bounds, actually, in Damien. I think that's what the dissent actually points out. I would point out to the court that we don't actually really know what the viability of Damien is going to be because, in fact, the United States has filed a petition for rehearing en banc in that case. We haven't heard what the result of that is yet. It's still an opinion that's on the books. It's considered to be a judgment of that court. Absolutely. But interestingly, if you look forward to see how other courts are responding to Damien, there's been very, very little activity. And those courts that have looked at it have not. It's, I think, three district courts to date. None of them have applied it in any event. From a substantive perspective, though, I just want to talk about why 16b is very different from ACCA. And that really has to do with a comparison of the elements of 16b versus those of ACCA. Specifically, 16b has very specific restrictions on the nature of the risk, the type of conduct, and the period of time in which the offense must occur. And that places the statute well within the ambit of the Due Process Clause. It's also important to note that since 2002 in Charles, this court has held to the rule that you can't conflate the elements of ACCA, although Charles was a 4b1.2 case, but the residual clause is the same between 4b1.2 and ACCA. So you can't conflate those elements to interpret those cases together. In the first instance, the conduct under 16b is direct. It's intentional. That's what Leocal tells us it has to be. And why is that? Because it's the use of physical force which is at issue. That is the conduct that we are looking at. It is not the diluted causation type of conduct that ACCA looks at, which was a serious potential risk that physical injury to another would occur. It has to do with the direct acts during the commission of the crime. That's another restriction, yes. The surrounding circumstances. Exactly. Now, critically, Leocal tells us that there's actually, although there are not enumerated offenses in 16b, 16a, which is an elements-based analysis, which is that the commission of the crime would involve the use, attempted use, or threatened use of physical force against the property of another. So that's elements-based. And Johnson tells us elements-based is good. And Leocal tells us that 16a informs 16b, informs the definition of physical force. And that is precisely what the Johnson court found wanting with regard to the enumerated offenses, that you really couldn't make head or tails of them. But with 16, you have this confluence of two separate statutory subsections which give each other content. Second, risk under 16b is very clearly defined because the risk is solely substantial. And this court and the Supreme Court have had no problem in defining what substantial means. Substantial is simply defined as a strong probability that the event, in this case the application of physical force, during the commission of the crime will occur. Contrast this to ACCA and the residual clause, where you had essentially like a two-step test. First you had to determine what was a serious risk, and then you had to determine what was a potential risk. Then you had to put those together. And that's one of the reasons why the Johnson court says this is just too far. In other words, in Johnson language, 16b does not present a how remote is remote problem. And that was one of the things that Johnson really pegged its decision to. The next element which is important to look at is time. Judge, you pointed out that 16b contains a very specific temporal restriction which speaks to that the use of physical force has to be during the commission of the crime itself. And that's in contrast to the residual clause, which as the Johnson court noted had to be the causation of physical injury, which in and of itself is somewhat difficult to quantify. It could be before, during, or after the commission of the actual offense. It's not true with 16b. And in Lea Cal, the Supreme Court characterized the temporal restriction as bounded by the use of the force against a victim in completing the crime. And this court has essentially followed that standard. So you maintain that substantial risk is a phrase that's susceptible to some very specific, unambiguous definition. And then when it goes on to talk about the physical force against a person or property of another. So is walking on the ground physical force against property, the ground? I mean, you're telling me it's very easy to determine exactly what all that means. Well, actually, I'm not the one telling you. I mean, what I'm saying is that the precedence of this court and the Supreme Court have indicated that they don't have a problem applying this standard. That substantial risk is a standard that's very well known to the court and easily applied. And that is one of the factors that the Johnson court looked to. We don't have the judicial morass, the black hole of precedent here that you did in the case of ACCA. And that's what makes a difference, is that it's an easily applied standard that also yields even-handed and consistent results. Even those cases, for example, judge in Echeverria or Sanchez-Espinal, the court does discuss the ordinary case method, which I'll address in one second. But on the other hand, the whole opinions are still based on Leocal's standard, and the court doesn't have any problem in applying that. I think it's true that you can't necessarily say, well, just because there aren't or are a lot of cases in one direction or another, that somehow that points to the constitutionality or vagueness of a statute. But here what I think we're trying to talk about is the quality of the cases, that you don't see the constant readjustment, the super-tinkering with the standards that you saw with the ACCA residual clause. And that's what the Johnson court really focuses on. It says this is just too much. We've tried for nine years, and we can't make it work. In other words, it's the government's position here that the Supreme Court got it right in Leocal. And if it isn't broken, don't fix it. And that finally brings me to my next issue, which is about the ordinary case method. And in this regard, I think the most important part throughout the Johnson opinion, the court does discuss on several occasions the application of the categorical approach. But it's at the very end of the opinion, and I don't usually like to read language, but it's very important language. And this is what the court says at the end of Johnson. Finally, the dissent urges us to save the residual clause from vagueness by interpreting it to refer to the risk posed by the particular conduct in which the defendant engaged, not the risk posed by the ordinary case of the defendant's crime. In other words, the dissent suggests that we jettison for the residual clause, though not for the enumerated crimes, the categorical approach adopted in Taylor and reaffirmed in each of our four residual clause cases. We decline the dissent's invitation. Again, at the very, very best, this leaves Mejia with no out except to argue that somehow, by implication, Johnson has eliminated the ordinary case method. But time and again, Judge, as you pointed out, this court, as it probably should do, has said, absent a clear directive from the Supreme Court, we are bound by prior precedent. And that precedent not only includes Leocal at the Supreme Court level, but also this court's precedents with regard to the categorical approach. I just wanted to address really quickly just three things that are very, very troubling about DiMaia. The first is that it conflates injury with the use of physical force. And again, this is something which this court, since Charles in 2002, has said, no, you can't do that. The second is that it dismisses the significant differences between the statute, as I've just discussed them, of those elements as minor. And it does exactly what the Johnson court says you shouldn't do, which is to look at the sum of everything all together. That's how Johnson actually reaches its decision. It looks at all of the elements, and it says, you know what? Individually, taken in isolation, they might not be so bad. But when you put them all together, it's a nightmare. And the opposite has to be true, too. You can't look at each one of these things in isolation. You have to look at how the statute functions as a whole. Oh, and one last thing, I'm sorry. DiMaia doesn't jettison the ordinary case method, which is exactly what the defense is asking you to do here, is to jettison the ordinary case method. So I'm not sure that actually, in that sense, DiMaia really helps them that much. Finally, there's a lot at stake in this case. There are over 40 federal statutes that are affected by the definition of 18 U.S.C. 16b. And, you know, it doesn't matter whether the application of those statutes is categorical in any one particular case. If the statute's unconstitutional, it is unconstitutional. And those statutes will be left without any definition. For all these reasons, if the Court has no further questions, the United States asserts that Mahia has not met his burden to overcome the presumption that this statute is constitutional. And in the absence of any clear ruling by the Supreme Court and the presence of lay account, this Court should exercise judicial restraint and refrain from finding 16b constitutional. Thank you. Thank you, Ms. Blatt. Ms. Davidson, you save time for rebuttal. Thank you. I'd like to start with the question of precedent because I really do think that's a fundamental and primary issue. The question before the Court is whether Section 16b is facially vague because it requires the ordinary case method. And that is a question that this Court has not addressed. So we do not have precedent in this Court that would prevent this Court's decision on that question. Number two, there was some discussion about how limited the Supreme Court made its Johnson decision. But in the flurry of cases post-Johnson, the Supreme Court has granted GVRs in cases dealing with just the career offender guideline and that definition. I think it's an excellent question whether or not the guidelines can be themselves determined to be unconstitutionally vague, whether or not there's even a right to do that. The Supreme Court has gone on to grant a GVR when that's applied under the reasoning of Johnson, which I think may be some indication that they have written Johnson in a way that allows circuit courts to act accordingly in other contexts than just ACCA. And U.S. v. Gonzales is a Fifth Circuit case that I've cited in footnote 3 of the reply where there was a GVR granted in a career offender guideline case. I think it's important to note that DMIA limits its decision to 16b and how 16b is applied. And it does not go on a hypothetical guessing game of how its decision is going to affect in every context that similar language may be used. And I think that's a dangerous exercise for this court to engage in as well. Ultimately, when the Supreme Court articulated the ordinary case method in James, this court has found that the language of 16b requires the same level of inquiry and engaging in the ordinary case method is the heart of the vagueness that exists for the residual clause as well as for 16b. And the government has not been able to point to a case or explain how that type of judicial guessing of what conduct creates the ordinary case creates an objective standard. So we do ask that this court continue to follow Supreme Court precedent in the way that it's aligned 16b with ACCA and find that by requiring the ordinary case method to analyze the language and to understand the language, it too lacks a standard sufficient under the Fifth Amendment and hold that it's unconstitutionally vague. Thank you. Thank you, Ms. Davidson. Your case is under submission.